UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
SHELBY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY E. HICKS, | ) | CASE NO.:  13-40030 |
| | ) | |
| Debtor | ) | CHAPTER 13 |
| _____ | ) | |

**OBJECTION TO CONFIRMATION OF CHAPTER 13
PLAN OF REORGANIZATION**

Julie D. Hicks ("Creditor"), by and through its undersigned counsel, hereby objects to the confirmation of the Debtor's Chapter 13 Plan of Reorganization filed on January 16, 2013 [Docket No. 1] and as amended.  In support of this Objection, the Creditor shows unto the Court as follows:

1.      The above-captioned matter is pending in the Western District of North Carolina, and Steven G. Tate serves as Trustee.

2.      This case was filed on January 16, 2013.

3.      Julie Hicks is the ex-wife of the Debtor.  She is scheduled as a creditor, but the Debtor does not propose to pay anything to her under his Plan.  Moreover, the Plan appears to attempt to dispossess Julie Hicks of funds to which she is entitled by a 10-year old Separation Agreement and by virtue of a North Carolina state court judgment.

4.      The deadline for filing and serving objections to the Plan has not expired. This Objection is timely.

5.      Debtor has or, at one time had a 20% partnership interest in J and C Partnership ("Partnership").   The Partnership owns and leases a commercial building in Indianapolis, Indiana.  Distributions are, upon information and belief, the sole source of Debtor's income.

6.      In his Schedule I, the Debtor lists monthly "income from real property" of $8,300.  Upon information and belief, this sum is a monthly distribution from the Partnership.

7.      The Debtor received approximately $100,000 from the Partnership in 2011 and 2012.

8.      Julie Hicks asserts an interest in income from the Partnership, as detailed below, based on a 2003 Separation Agreement.  The 2003 Separation Agreement granted Julie Hicks one-half of the Debtor's interest in the Partnership and entitled her to "equally share in the income, distributions, depreciation, and other economic benefit or consequence of owning that partnership interest."  See Exhibit A.

### The Trust Account Funds

9.      In his Schedule B, Debtor lists as an asset "Funds in Attorney Trust Account" of $110,000.  Upon information and belief, these funds represent distributions from the Partnership, to the Debtor and presently being held by attorney Travis Greene.

10.      The right to those funds has been the source of ongoing litigation between Julie Hicks, the Debtor, and the Debtor's brother, Ty Rininger, in a North Carolina Civil Superior Court action captioned *Gregory E. Hicks v. Julie D. Hicks v. Ty W. Rininger*, Polk County Superior Court File No. 11-CVS-37 (the "State Court Action").

11.      Julie Hicks contends that those funds are not property of the Debtor's Estate and that they belong to her by virtue of an Order on Motion for Partial Summary Judgment ("State Court Order") entered on December 19, 2012.  See Exhibit B.

12.      Debtor did not schedule the State Court Action in his Statement of Financial Affairs.

13.      The State Court Order states in pertinent part:

1. Julie Hicks is declared and confirmed to be the beneficiary of a 10% income/distribution interest in the J & C Partnership (which has heretofore and presently in the sum of $4,150 per month based upon the current rental value of the warehouse which is held as an asset of said partnership) and accordingly is hereby entitled to all previously tendered and / or paid but undistributed income/distributions and all separate income/distribution payments reflecting what was awarded in the parties' 2003 Separation Agreement.

2. Counsel Travis Greene is to issue immediately to Defendant Julie Hicks a check from his escrow account reflecting all proceeds he is holding from the distributions having previously been made from August 2011 forward reflecting the [Debtor's] 10% income/distribution interest in the J & C Partnership.

3. Further, the Judgment ordered that if the "J & C Partnership continued to pay income or distributions from the J & C Partnership directly to the [Debtor] (or his agent or assign)" then the Debtor is to pay "immediately to Julie Hicks her awarded portion (10% of the total monthly income/distribution to all partners) of any such income or distributions."

14.     With respect to Paragraph 2 of the State Court Order, Julie Hicks submits, upon information and belief, that the proceeds in Travis Greene's escrow account are the same funds scheduled as $110,000 in Debtor's Schedule B.

15.     The Debtor's Plan appears to disregard the State Court Order.  The Debtor's Plan appears to award $95,000 of these funds to Ty Rininger, brother of the Debtor.  Ty Rininger was an intervenor in the State Court Proceeding.  Ty Rininger asserted his right to the funds in Travis Greene's escrow account in the State Court Proceeding, but the state court ruled against him.  Additionally, Ty Rininger apparently also hold a power of attorney for the Debtor.

16.     Julie Hicks respectfully submits that the Debtor may not use the Chapter 13 process to reverse the State Court Order, and that the State Court Order is entitled to full faith and credit in this Court.  28 U.S.C.A. §1738; See generally Matter of Gorrow Development Corp., 135 B.R. 427 (M.D. Fl. 1991).

### The Debtor's Interest, if any, in J and C Partnership

17.     Also in his Schedule B, the Debtor lists as an asset "J and C Partnership (subject to assignment)" of $600,000.

18.     Julie Hicks contends that there is an unresolved issue as to whether the Debtor maintains any **ownership** interest in the Partnership and whether Debtor retains any **income** interest in the Partnership.

3

19.     In the State Court Action, the Debtor contended that he had assigned his 20% **ownership** interest to Ty Rininger.  In his filings in the bankruptcy, Debtor is ambiguous about whether his interest in the Partnership is estate property.  In Schedule B, he uses the parenthetic "subject to assignment."  In his Plan, he states that his brother Ty Rininger is the "Holder of Assignment of Partnership Interest" for $95,000.

20.     As set forth in the excerpt from the State Court Order, the court held that Julie Hicks is the beneficiary of 10% of the income interest of the Partnership, or put another way, half of the 20% ownership interest.

21.     The court reserved the issue of the effect of the alleged assignment from Debtor to Ty Rininger of the **ownership** interest, and the remaining **income** interest for hearing at a later date.

22.     Given this uncertainty, it would be premature for this Court to confirm the Plan without further information from the Debtor.  Indeed, Julie Hicks has filed a separate Motion for Relief from the Automatic Stay [Docket No. 12] seeking stay relief so that the litigation in the State Court Action may be completed and these issues resolved.

### The Executory Contract

23.     In his Schedule G, the Debtor lists Julie Hicks as having an executory contract and states "Executory Contracts related to property settlements to be rejected."

24.     On February 12, 2013, the Debtor filed an Amendment to his Chapter 13 Plan in which he stated that "[t]he Executory Contract related to property settlement held by Julie D. Hicks is to be rejected."  [Docket No. 7.]

25.     Julie Hicks does not know whether this executory contract is the 2003 Separation Agreement between Julie Hicks and the Debtor, the State Court Order, or some other contract.

26.     If the Debtor is referring to the 2003 Separation Agreement, then Julie Hicks contends that it is not an executory contract under Section 363 that can be rejected. Moreover, the Debtor may not collaterally attack the 2003 Separation Agreement in this bankruptcy.  See In re DeLauro, 207 B.R. 412 (D. N.J. 1997).

27.     For these reasons, Julie Hicks files this Objection to preserve her rights, and hereby objects to confirmation of the Plan because it unlawfully dispossesses her of her right

to proceeds from the Partnership, seeks to have this court act as a super-appellate court and overturn the State Court Order, and does not provide for fair and equitable treatment of her claim.

28.    Julie Hicks reserves the right to assert additional and further objections at the hearing on this matter.

WHEREFORE, Julie Hicks prays unto the Court as follows:

1.    The Court schedule a hearing on confirmation of the proposed Chapter 13 Plan.

2.    That confirmation of the Debtor's proposed Chapter 13 Plan be denied as proposed.

3.    That she have such other and further relief as to the Court may seem just and proper.

This the 26th day of February, 2013.

/s/ *Lance P. Martin* _____
Lance P. Martin
N.C. State Bar I.D. No.:  027287
E-mail:  lpm@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC  28802-2020
Telephone:  828.348.6070
Facsimile:  828.348.6077
Attorneys for Julie D. Hicks

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN OF REORGANIZATION  by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail, addressed to the following persons at the following addresses which are the last addresses known to me:

Gregory E. Hicks
c/o Ty Rininger POA
7810 Lorraine Dr.
Okeana, OH 45053

Edward C. Hay, Jr.
Pitts, Hay & Hugenschmidt, P.A.
137 Biltmore Avenue
Asheville, NC 28801
*Attorney for Debtor*

Steven G. Tate
212 Cooper Street
Statesville, NC 28677
*Chapter 13 Trustee*

This the 26th day of February, 2013.

/s/ *Lance P. Martin*  _____
Lance P. Martin
N.C. State Bar I.D. No.:  027287
E-mail:  lpm@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 2020
Asheville, NC  28802-2020
Telephone:  828.348.6070
Facsimile:  828.348.6077
Attorneys for Julie D. Hicks

130211-00001
ND: 4837-9140-4818, v. 1

EXHIBIT

A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA
FAMILY DIVISION

JULIE HICKS
    Petitioner

and

GREG HICKS
    Respondent



Civil Action File No.: 2003CV68106

## SEPARATION AGREEMENT

This agreement is entered into between JULIE HICKS and GREG

HICKS.

## ARTICLE 1. GENERAL PROVISIONS

1.   **Marriage and Separation**. The parties were married to each other on

October 9, 1982 in Cincinnati, Ohio. The parties were separated on

February 11, 2001 and have lived in a *bona fide* state of separation

since then.

2.   **Settlement**. Because of irreconcilable differences in our marriage,

this agreement made to settle once and for all what is owed to each



other and what can be expected to be received from the other.

3.   **Disclosure**. Nothing has been held back, each party has honestly
included everything in listing assets and debts, and that each believes
the other has been open and honest in writing this agreement.  The
parties waive the requirements of formal financial disclosures.

4.   **Voluntary**.  This agreement is entered into freely and voluntarily.
Each party either consulted with an attorney or had the opportunity to
consult with an attorney prior to signing this agreement.  Steven R.
Jacob represented the wife in this matter and prepared this agreement.
Lisa Haddock-Malas represented the Husband.

5.   **Separation**.  Each party has the right to live separate and apart from
each other, free from harassment or interference by the other.

6.   **Waive Estate Claim**. Each party waives, releases and relinquishes all
rights that he or she may have to take against the Estate of the other,
or to act as executor of the other's Estate.

7.   **Further Assurances**.  Each party agrees to execute and exchange any
papers that might be needed to complete this agreement, including
deeds, title certificates, etc.  Within a reasonable period of time, upon
written demand, unless specific times otherwise set forth above, the

parties shall execute, acknowledge, and deliver all documents or instruments required to carry out the provisions and intent of this agreement. The terms of this agreement are binding on the parties' heirs, assigns and estates.

8. **General Release**. This instrument constitutes a complete, general and mutual release of all claims or interest whatsoever against each other except for the terms set forth in this agreement.

9. **Attorney's Fees**. If either party institutes litigation to seek enforcement of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs. Each party pays their own attorney's fees and costs in this proceeding.

10. **Tax Advice**. The parties hereby acknowledge and agree that each has had the opportunity to retain his/her accountant, certified public accountant, tax advisor, or tax attorneys with reference as to the tax implications of this agreement. Both parties hereby acknowledge that neither has relied upon the tax advise that may or may not have been given by the respective attorneys who have represented them in negotiating this agreement and the divorce proceedings. Further, both parties acknowledge that each party has been advised by their

respective attorneys to seek his or her own independent tax advise by

retaining an accountant, certified public accountant, tax advisor, tax

attorney, or tax advisor with reference to the tax implications

involved in this agreement.  The parties acknowledge and agree that

their signature to this agreement serves as their acknowledgment that

they have read the particular paragraph, and had an opportunity to

seek independent tax advise.

11.    **Indemnification**.  Indemnification provided for in this agreement

shall include the cost to defend any such claim, including reasonable

attorney's fees; and releases all rights of dower, curtsey, homestead,

spouse's elective shares, or inheritance, as well as any other rights

that they have or hereafter have in the other parties personal property

or estate by reason of the marriage, during the other party's lifetime

or after the other party's death, and shall execute, acknowledge and

deliver at the request of the other party or their legal representative,

without cost or expense of other party, all instruments which may be

necessary to effectuate this release.

12.    **Severability**.  In the event that a Court of competent jurisdiction shall

make a determination of one or more provisions of this agreement are

unenforceable or void, then the husband and wife agree that

nevertheless, the remaining provisions of this agreement shall continue, in full force and effect.

13.  **Incorporation of Agreement without Merger.** If either party institutes a proceeding for support or for divorce, then this agreement shall be a final settlement of those rights and shall be incorporated by reference into any final order or judgment. However the terms of this agreement shall not merge into the final order or judgment but shall survive the order or judgment.

## ARTICLE II.  MARITAL ASSETS AND LIABILITIES

**Division of Assets.** The parties divide their assets as follows. Any personal item not listed below is the property of the party currently in possession of the item.

14.  **Wife shall receive as her own and Husband shall have no further rights or responsibilities regarding these assets:**

   a.  Since the parties have already divided the proceeds from the sale of the marital home, wife shall be entitled to the home and furnishings located at 235 Hembree Rd, Roswell GA 30075 free from any claim of the husband.

   b.  Wife shall receive one-half of the husband's interest in a



partnership known as J&C Partnership, which currently owns a

warehouse in Indiana. Husband will make sure that the

partnership papers are amended to reflect that the wife owns one-

half of the husband's interest. The parties will equally share in the

income, distributions, depreciation and any other economic benefit

or consequence of owning that partnership interest, except as

otherwise provided in this agreement.

c. Wife will retain her IRA in the approximate amount of $3300.

d. Wife shall be entitled to a portion of the husband's 401K at

Vanguard equal to the total of his annuities with Aetna plus one-

half of the balance in the 401K. A Qualified Domestic Relations

Order shall effect the distribution to the wife.

e. Wife shall be entitled to one-half of the husband's pension from

Bunzl, valued as of the date of signing this agreement. A Qualified

Domestic Relations Order shall effect the distribution to the wife.

f. Wife will remain a custodian on the children's educational

accounts.

g. Wife shall be entitled to ownership of the Ford Explorer.

15. **Husband shall receive as his own and Wife shall have no further**

rights or responsibilities regarding these assets:



From: Katherine Dare   Fax: (828) 414-3920   To: Eugene Carr   Fax: +1(828) 697-8803   Page 8 of 11 9/19/2012 2:08

a. Husband shall retain his share of the proceeds from the sale of the marital home.

b. Husband shall retain one-half of his partnership interest in J&C Partnership after transferring one-half of his interest to the wife.

c. Husband shall retain his IRA in the approximate amount of $3300.

d. Husband shall retain his Aetna annuities.

e. Husband shall transfer to the wife from Husband's 401K (Vanguard) an amount equal to his Aetna annuities plus one-half of the remaining balance. He shall retain the remaining balance in his 401K.

f. Husband shall transfer one-half of his pension with Bunzl, by QDRO, to the wife, valued as of the date of this agreement and he shall retain his remaining interest.

16. **Division of Debt.** Neither party shall incur any debt that the other party may be liable for. Each party shall be liable for the debts in their respective name and shall indemnify the other and hold them harmless.

## ARTICLE III. SPOUSAL SUPPORT (ALIMONY)

17. In addition to the Wife receiving ½ of the income from the partnership interest in the J&C Partnership, the Husband shall pay to the Wife the

husband's share of income from his remaining partnership interest in
J&C Partnership but in no event less than $4,150 per month
commencing upon the date of this agreement continuing monthly on
the same date of the month through May 2010. Of that amount,
$3,000 shall be considered child support and the balance shall be
treated as alimony.

18. The husband's obligation to pay alimony shall terminate prior to May
2010 upon the husband's death, the wife's death or the wife's
remarriage.

19. Husband will provide COBRA group health insurance for the wife at
husband's expense for one year from the date of this agreement. That
premium payment is considered alimony for tax purposes.


## ARTICLE IV: CHILD CUSTODY AND PARENTAL RESPONSIBILITY

20. The parties' children are: Ryan Gregory Hicks 5/14/84, Jenny
Michelle Hicks 2/22/86, Sean Thomas Hicks 8/3/91

21. Legal Custody for the minor children will be joint, with the mother
as the tie breaker, including but not limited to the following mutual
rights and obligations:



From: Katherine Dare    Fax: (828) 414-3920        To: Eugene Carr    Fax: +1(828) 697-8803    Page 10 of 11 9/19/2012 2:08

a.     Consult with each other upon the major decisions affecting

the welfare of the child.

b.     Assure frequent and continuing contact between the child

and parent.

c.     Decide jointly upon specific educational, living, financial,

medical and legal matters and other matters concerning the child's

welfare.

d.     Set aside personal disharmony in favor of the best interests

of the child.

e.     Notify the other party of any serious illness or accident.

f.     Have access to the child's records such as school, medical

and dental.

22.   **Physical Custody** will be with the wife.

23.   **Time-Sharing** will be reasonable and liberal as agreed to by the

parties.

## ARTICLE V. CHILD SUPPORT

24.   Husband shall pay child support to the Wife in the amount of $3,000

per month which is based on 25% of the husband's anticipated annual

income. The child support amount is included in the total payment of

$4150 per month that the husband is to pay to the wife pursuant to



paragraph 17.  Child support shall terminate after May 2010.

25.      **Health Insurance**. Husband shall provide health insurance coverage for the children.  Both parents shall equally share any uninsured or un-reimbursed expense. As to these uninsured or un-reimbursed medical expenses, the party who incurs the expense shall submit a request for reimbursement to the other party within 30 days, and the other party, within 30 days of receipt, shall submit the applicable reimbursement for that expense.

26.      **Life Insurance**. Husband shall be required to maintain life insurance coverage for the benefit of the wife and the parties' minor children in the amount of $1,000,000 until the obligation to pay child support terminates.  Wife will pay the premiums.

JULIE HICKS

Sworn to and subscribed before me, this 27 day of May 2003.

NOTARY PUBLIC

GREG HICKS

Sworn to and subscribed before me, this 23rd day of May 2003.

NOTARY PUBLIC        10-12-2005

## ASSIGNMENT OF PARTNERSHIP INTEREST

This Assignment Agreement (the "Assignment") is entered into this 1st day of January, 1999, (the "Effective Date") by and between GREGORY E. HICKS (the "Assignor") and TY W. RININGER (the "Assignee"). The Assignor and the Assignee are referred to herein collectively as the "Parties" or individually as a "Party."

### RECITALS

WHEREAS, the Assignor is a partner in the J & C Partnership (the "Partnership"), a real estate investment partnership formed in the County of St. Louis, State of Missouri and holding real estate interests in the County of Marion, State of Indiana;

WHEREAS, the Assignor's brother, the Assignee has provided care and financial support for the Parties' mother, BILLIE JEAN MINIARD;

WHEREAS, the Assignor desires the Assignee to continue providing care and financial support for the Parties' mother, as well as make other reasonable efforts to maintain her estate and well being;

WHEREAS, the Assignor, at present, does not desire to retire or withdraw from, nor dissolve the J & C Partnership;

WHEREAS, the Assignor desires this Assignment should not require modification to the J & C Partnership's amended partnership agreement, dated September 26, 1991;

- 1 -

G.H.

T.R.

represent a twenty-percent (20%) partnership interest and all of the Assignor's transferable interest in the Partnership.

## 2. ASSIGNMENT OF CAPITAL ACCOUNT

The Assignor hereby transfers and assigns all rights of succession and ownership to the Assignor's entire capital account, as represented by the Assignor's twenty-percent (20%) partnership interest which may result from death, retirement, withdraw or dissolution to the Assignee.

## 3.    ASSUMPTION

For and in consideration of the transfer and assignment herein, the Assignee hereby assumes all of the Assignor's transferable rights, titles and interest in the Partnership. The Assignee assumes the continued financial support and care for the Parties' mother up to and beyond the death of the Assignor, assuming the Assignor should predecease the Assignee.  The Assignee assumes the responsibility to ensure the Assignor has the benefit and discretionary use of all the funds produced from the transferable partnership interest, including the cash distributions from the Partnership until the time of the Assignor's death, retirement, withdraw, or the dissolution of the Partnership as governed by the amended Partnership agreement. The Assignor will continue to assume the obligations, responsibilities, and duties under the Partnership's amended partnership agreement, including tax obligations for income and cash distributions received by the Assignor.

## 4.    COUNTERPARTS/ELECTRONIC SIGNATURES

This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but

- 3 -

G.H. *[signature]*
T.R. *[signature]*

-6-

all of which shall constitute one and the same instrument.
For purposes of this Assignment, use of a facsimile, e-mail,
photocopy or other electronic medium shall have the same
force and effect as an original signature. Any facsimile e-
mail, photocopy or other electronic medium of this Assignment
or a counterpart hereof shall be admissible into evidence in
any proceeding as though the same were an original.

    5.   AGREEMENT CONTINUANCE

This Assignment shall continue to remain in full force
and effect, and the Parties hereby ratify and confirm the
terms and conditions thereof and shall be binding upon and
inure to the benefit of the respective legal representatives,
heirs, successors and assigns of the Parties hereto.

    6.   MODIFICATION

This Assignment may be supplemented, amended, or
modified only by the mutual agreement of the Parties, which
agreement must be in writing and signed by both Parties.

    7.   ENTIRE AGREEMENT

This Assignment constitutes the final, complete, and
exclusive statement of the agreement of the Parties with
respect to the subject matter hereof, and supersedes any and
all other prior and contemporaneous agreements and
understandings, both written and oral, between the Parties.

    8.   QUITCLAIM

As part of this Assignment the undersigned Assignor also
transfers, releases and quitclaims all the right, title or
interest Assignor may have in and to any and all assets owned
by or titled in the name of the Partnership.

-  4  -

G.H

T.R.

## 9.   RETIREMENT & WITHDRAWL

This Assignment should not alter the accounting or valuation of the capital account associated with the assigned partnership interest as governed by the amended partnership agreement and related tax codes. However, the Assignor may state an effective date of withdraw in serving proper notice to the other partners which will terminate the Assignee's responsibility to the Assignor regarding the use, access or rights to any income or cash distributions received from the partnership interest after the effective withdraw date.

## 10.   WARRANTY & INDEMNIFICATION

The Assignor agrees to indemnify, defend, and hold the Assignee harmless from and against all claims, actions, judgments, liabilities, proceedings, and costs (including, without limitation, reasonable attorney's fees and other costs of defense and damages) that may after the Effective Date be suffered by or asserted against the Assignee by reason of the Assignor's failure to have performed, prior to, or after the Effective Date, all of the Assignor's obligations under the J & C Partnership Agreement or by reason of any other claims accruing prior to, or after the Effective Date that may be asserted with respect to the Assignment. The Assignor hereby represents and warrants: 1) the Assignor owns the partnership interest being hereby transferred free and clear of any adverse claim or interest, and 2) the Assignor may lawfully transfer, assign and convey the entire transferable partnership interest to the Assignee.

## 11.   AUTHORITY

Each Party executing this Assignment on behalf of himself, or on the behalf of other interested parties, or

-   5   -

G.H.

T.R.

other legal entities, represents and warrants that he has all requisite right, power, and authority to do so and to bind such Party or entity to each and all of the terms hereof.

12.  FORUM & GOVERNING LAW

Unless otherwise mutually agreed upon in writing by the Parties or by a surviving party, this Assignment is to be construed according to the laws of the state of Ohio. Furthermore, the Parties hereto agree that all actions or proceedings arising in connection with this Assignment shall be tried and litigated exclusively in the State and Federal courts located in the County of Hamilton, State of Ohio. The aforementioned choice of venue is intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Assignment in any jurisdiction other than that specified in this paragraph. Each Party hereby waives any right it may have to assert the doctrine of forum non conveniens or similar doctrine or to object to venue with respect to any proceeding brought in accordance with this paragraph, and stipulates that the State and Federal courts located in the County of Hamilton, State of Ohio shall have in personam jurisdiction and venue over each of them for the purpose of litigating any dispute, controversy, or proceeding arising out of or related to this Assignment.

13.  SEVERABILITY

Whenever possible, each provision of this Assignment will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Assignment is held to be invalid, illegal, or unenforceable

-  6  -

G.H. _____

T.R. _____

in any respect under any applicable law or rule in any
jurisdiction, such invalidity, illegality, or
unenforceability will not affect any other provision or any
other jurisdiction, but this Assignment will be reformed,
construed, and enforced in such jurisdiction as if such
invalid, illegal, or unenforceable provisions had never been
contained herein.

14.  HEADINGS

Headings used in this Assignment are provided for
convenience only and shall not be used to construe meaning or
intent.

- 7 -

G.H. *G.H.*

T.R.

IN WITNESS whereof, the Parties hereto have executed
this instrument and affixed their seals hereto as of this
26th day of January, 1999.

ASSIGNOR:

_____ (SEAL)
GREGORY E. HICKS

ASSIGNEE:

_____ (SEAL)
Ty W. Rininger

_____
Witness

_____
Witness

_____
Notary Public
Date Commission Expires: 7-16-2004

State of Ohio
County of Hamilton

- 8 -

G.H.
T.R.

-11-

AFFIDAVIT OF EXECUTION
STATE OF OHIO
COUNTY OF HAMILTON

We, _Robert Murphy_ and _Mildred Murphy_,
do solemnly affirm, the Assignor, _____
and the Assignee, _____, have presented
identification, are 18 years of age or older and have executed
the within Assignment of Partnership Interest agreement in our
presence, and have both acknowledged to us, the witnesses, that
they executed the same for the purposes therein stated and
requested that we sign our names on the within document as
executing witnesses.


_Robert Murphy_ (witness)


_Mildred Murphy_ (witness)


Subscribed and affirmed before me this _20th_ day of
January, 1999.

_____ (notary)


Commission Expires: _July 16, 2004_
_State of Ohio_
_Hamilton County_


-12-

EXHIBIT "A"

ASSIGNMENT OF PARTNERSHIP INTEREST

1.   KNOW ALL MEN BY THESE PRESENTS, that, for and in
consideration of $10.00 and other good and valuable
consideration, the receipt, adequacy and sufficiency of which are
hereby acknowledged, GREGORY E. HICKS ("Transferor") does hereby
transfer, assign and convey to JULIE D. HICKS ("Transferee") one
(1) unit of Participation in the J & C Partnership representing a
Ten percent (10%) Partnership Interest (the "Interest") in J & C
Partnership, a General Partnership (the "Company") this being all
of Transferor's remaining Interest in the Company, with a view to
substitution of the Transferee for the Transferor as a Partner of
the Company with respect to the Interest transferred hereunder
(such transfer and substitution being referred to collectively
herein as the "Transfer").  The Transferor shall be released from
his obligations under the Company's Partnership Agreement dated
February 12, 1990 as amended and restated on September 26, 1991
(both of which are collectively referred to herein as the
"Partnership Agreement") as to such transferred Interest only
arising after the effective date of this Transfer of Interest
hereunder.

2.   The Transferor hereby represents and warrants:  (a) that
he owns the Interest being hereby transferred by him free and
clear of any adverse claim or interest whatsoever; (b) that he
may lawfully transfer, assign and convey such portion of the
Interest to Transferee; (c) that upon effectuation of the
Transfer of such Interest, Transferee shall own such Interest
free and clear of any adverse claim or interest whatsoever, and
(d) that this transfer will give Transferee all of Transferor's
interest in the Company as the date hereof.

3.   Transferee acknowledges receipt of a copy of the
Partnership Agreement and hereby agrees henceforth to be bound by

and to comply with all of the terms and conditions of said Partnership Agreement.

4. Transferee shall succeed to all of Transferor's capital account in the Company as of the date hereof, but not below zero if his capital account shall be negative as of the effective date hereof. Transferor and Transferee hereby agree to take such further action and to execute such further documents as may be appropriate to effect, evidence and/or perfect the Transfer hereunder.

5. This instrument may be executed in multiple counterparts (each signed by one or more parties and collectively exhibiting the signatures of all parties), each of which shall be deemed an original and all of which shall constitute one instrument.

6. This instrument shall be considered to have been executed by a person if there exists a photocopy or facsimile copy (or a photocopy of a facsimile copy) of an original hereof (or of a counterpart hereof) which has been signed by such person. Any facsimile copy (or photocopy of a facsimile copy) of this instrument or a counterpart hereof shall be admissible into evidence in any proceeding as though the same were an original.

7. This instrument and the Transfer shall be effective as of *August 1*, 2010.

8. The Partnership Agreement shall be amended as set forth in Exhibit "A" hereto (which Exhibit is by this reference incorporated herein) to reflect the Transfer of the Partnership Interest conveyed by this Assignment. By execution of this Assignment all Partners consent to the Transfer.

9. This agreement shall be binding upon and inure to the benefit of the respective legal representatives, heirs, successors and assigns of the parties hereto.

10. This agreement constitutes the entire agreement between the parties with regard to these matters and may not be amended

2

except by an agreement in writing signed by both parties.

11.   As a part of this Assignment the undersigned Transferor also transfers, releases and quitclaims all of the right, title or interest Transferor may have in and to any and all assets owned by or titled in the name of the Company and agrees to execute any instrument needed by Transferee in the future to effectuate or evidence the foregoing.

12.   This Transfer is made pursuant to the Purchase Agreement of the parties, of even date herewith.


IN WITNESS whereof, the parties hereto have each executed this instrument and affixed their seals hereto as of the 8 day of July, 2010.

TRANSFEROR:

Signed, sealed and delivered in my presence:

_____ (SEAL)
GREGORY E. HICKS

_____

_____
Notary Public

MY COMMISSION EXPIRE
APRIL 26TH 2016

TRANSFEREE:

Signed, sealed and delivered in my presence:

_____ (SEAL)
JULIE D. HICKS

_____

_____
Notary Public

3

EXHIBIT "A"

Effective as of the effective date of the foregoing Transfer, the J & C Partnership Agreement dated February 12, 1990 and amended and restated on September 26, 1991, is hereby further amended as follows to reflect such Transfer:

(1)  Paragraph 4. of Article III is amended to reflect units ownership as follows:

| | |
|---|---|
| Carol Von Deylen | 6 Units |
| Gregory E. Hicks | 0 Unit |
| Julie D. Hicks | 2 Units |
| James Von Deylen | 2 Units |
| Total | 10 Units |

(2)  Paragraph (9) of Article IV is amended to reflect allocation of net profit or net losses as follows:

| | |
|---|---|
| Carol Von Deylen | 60% |
| Gregory E. Hicks | 0% |
| Julie D. Hicks | 20% |
| James Von Deylen | 20% |
| Total | 100% |

In all other respects the Partnership Agreement shall remain unchanged.

5

**EXHIBIT**

**B**

STATE OF NORTH CAROLINA

COUNTY OF POLK

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 11 CVS 37

FILED
2012 DEC 19  AM 9: 35
POLK COUNTY, C.S.C.
BY _____ Dep

GREGORY E. HICKS,
          Plaintiff,

          v.

JULIE D. HICKS,
          Defendant,

          v.

TY W. RININGER,
          Intervenor.

ORDER ON MOTION FOR
PARTIAL SUMMARY JUDGMENT

This cause came before the undersigned Superior Court Judge Presiding before the Superior Court of Transylvania County, upon due notice of hearing for cross Motions for Summary Judgment in the above captioned Polk County case.

At the call of the case, counsel for Plaintiff and Intervenor Defendant, Travis Greene, announced that he was withdrawing his Motion for Summary Judgment filed on behalf of the Plaintiff.

Further counsel for Defendant announced that his motion was only for partial Summary Judgment.

After hearing the arguments of counsel and considering the brief of Defendant and the case submitted by Plaintiff, the court finds that as to the issue of whether Defendant is entitled to the income and distribution from the 10 % (one unit) share of the J & C Partnership, there is no genuine issue of material fact, and she is entitled to the entry of an order accordingly.

Therefore it is ORDERED as follows:

1. Defendant Julie Hicks is declared and confirmed to be the beneficiary of a 10 % income/distribution interest in the J & C Partnership (which has heretofore and presently in the sum of $4,150.00 per month based upon the current rental value of the warehouse which is held as the asset of said partnership), and accordingly is hereby entitled to all previously tendered and / or paid but undistributed income/distributions and all future income/distribution payments reflecting what was awarded in the parties' 2003 Separation Agreement.

2. Counsel Travis Greene is to issue immediately to Defendant Julie Hicks a check from his escrow account reflecting all proceeds he is holding from the distributions having previously been made from August 2011 forward reflecting the Defendant's 10 % income / distribution interest in the J & C partnership.

3. In the event that notwithstanding this order, the J & C partnership continues to pay any income or distributions from the J & C partnership directly to Plaintiff (or his agent or assign) Plaintiff (or his agent or assign) is/are hereby ordered to pay immediately to Defendant, Julie Hicks, her awarded portion (10% of the total monthly income/ distributions to all partners) of any such future income or distributions.

4. Nothing in this order assigns to Defendant an ownership interest in the J & C partnership but only an income interest, and the issue of such ownership is reserved for hearing at a later date.

5. The issues of the effect of the alleged assignment by Plaintiff to the Intervenor of the Plaintiff's 20% ownership interest in the J & C Partnership and the income/ownership rights from the Plaintiff's remaining 10% share claimed by both Plaintiff and Defendant are hereby reserved for hearing at a later date..

This the _19_ day of December, 2012.

Mark E. Powell
Superior Court Judge Presiding

A TRUE COPY
CLERK OF SUPERIOR COURT
POLK COUNTY
BY
Assistant, Deputy Clerk Superior Court

## CERTIFICATE OF SERVICE

The undersigned Attorney for Defendant hereby certifies that the foregoing Order was served upon the following addressee this date by:

_____ hand delivering a copy thereof to the last known address stated below.

_____ by facsimile at facsimile number – 1-888-359-0349

or by

_____ mailing a copy thereof to the last known address stated below, by depositing same enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service.

Addressees:   Travis S. Greene, Esquire
104 N. Daniel Morgan Avenue
Spartanburg, SC  29306

This the 19 day of December, 2012.

BAZZLE, CARR & PARCE, P.A.

BY: _____
Eugene M. Carr III
P.O. Box 608
Hendersonville, NC  28793
(828) 697-4327